NOT FOR PUBLICATION                                                                                    CLOSED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GIRIJA N. ROY FAMILY TRUST, : | |
| : | |
| Plaintiff/ Counter-Defendant, : | |
| : | |
| v. : | CIVIL ACTION NO. 07-2996 (JLL) |
| : | |
| JOHN HANCOCK LIFE INSURANCE COMPANY, : | |
| : | |
| Defendant/ Counter-plaintiff/ Third-party plaintiff : | |
| : | |
| v. : | **OPINION AND ORDER** |
| : | |
| PRYIA N. ROY, Trustee of the Girija N. Roy Family Trust, : | |
| : | |
| Third-party Defendant : | |

**LINARES, District Judge.**

Currently before the Court is a motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Defendant John Hancock Life Insurance Company ("Defendant" or "John Hancock" or "JHLIC"). (Docket Entry #19.) Plaintiff the Girija N. Roy Family Trust (the "Trust") and Third-party Defendant Pryia N. Roy (collectively, the "Trust Parties") have filed opposition. The Court has considered the submissions of the parties and has heard oral argument. For the reasons set forth below, John Hancock's motion for summary judgment is granted.

**I.     Facts**

On December 18, 2003, Dr. Girija N. Roy ("Dr. Roy") applied to John Hancock for a $1

million, fifteen-year Term Life Insurance Policy at a preferred rate.  (JHLIC SOF ¶ 1; Trust SOF ¶¶ 13-16.)[1]  Mr. Uday Varma was the registered representative of John Hancock who guided Dr. Roy through the application process.  Part B of the application, entitled "Statements to the Company's Agent," asked Dr. Roy whether he had "ever been treated or had any known indication of ... tumor or cancer ...?"  (JHLIC SOF ¶ 3.)  Dr. Roy answered "no" to that question.  (Id.)  Part B also included a signature page, where Dr. Roy signed his name, set forth his name and address, and dated the application.  Above Dr. Roy's signature included a condition precedent to issuance of the policy that stated as follows:

> . . . any new policy or Benefit provision will take effect as of the Date of Issue of the policy, but . . . only if at the time of such delivery [of the Policy] and payment each person proposed for insurance in parts A and B of this application is living and has not consulted or been examined or treated by a physician or practitioner since the latest Part B pertaining to such person was completed.

(Id. ¶ 5.)

On December 24, 2003, Dr. Roy underwent a medical examination in connection with his application for insurance.  (Id. ¶ 6.)  At that time, he also completed the application's "Part B Statements to Company's Medical Examiner."  This Part B asked whether Dr. Roy had "[e]ver been treated for or had any known indication of . . . cancer?"  (Id. ¶ 9.)  Dr. Roy answered "no."  (Id.)  He signed this portion of the application on December 24, 2003.

Over the next three months, Dr. Roy met with and was examined by several doctors.  On January 8 and 12, 2004, he was examined by his "good friend" and primary care physician, Dr. Sudhanshu Prasad.  (Id. ¶ 11.)  Dr. Prasad ordered Dr. Roy to have blood tests, including a

---

[1] JHLIC SOF refers to John Hancock's Statement of Facts, and Trust SOF refers to the Trust Parties' Statement of Facts.

"Hepatitic Function Panel." (Id.)  On January 13, 2004, Dr. Roy was examined by Dr. Baburao Koneru, Chief of the Liver Transplant and Hepatobiliary Disease Center at the University Hospital.  (Id.)  Dr. Koneru discussed with Dr. Roy the fact that a "CT abdomen" had revealed a large tumor in his liver.  (Id. ¶ 14.)  On January 15, 2004, a "helical CT of the abdomen" revealed that the hepatic lesions on Dr. Roy's liver were consistent with hepatocellular cancer.  (Id. ¶ 16.)  On January 16, 2004, Dr. Roy was admitted to the University Hospital for a liver biopsy to determine that nature of his liver tumor.  (Id. ¶ 19.)  After the procedure, Dr. Koneru confirmed his initial diagnosis of hepatocellular cancer.  (Id. ¶ 25.)

Following the January 16, 2004 liver biopsy, Dr. Roy visited doctors on following dates: (1) January 19, 2004 visitation with Dr. Arvand Kumar and completion of whole body bone scan; (2) January 22, 2004 consultation with Dr. William R. Jarnagin; (3) January 23, 2004 admission to hospital for a portal vein embolization; (4) January 28, February 12, and February 9, 2004, respectively, where Dr. Roy underwent a "hepatic function panel," a "routine helical CT examination of the abdomen" and "Chest PA & Lateral" and a "CBC"; (5) February 18, 2004 admission to hospital for "right trisegmentectomy" of the liver.  (Id. ¶¶ 26-46.)  Following the February 18th surgery, Dr. Roy remained in the hospital for eight days, eventually getting discharged on February 25, 2004.  (Id. ¶¶ 53-54.)

On February 24, 2004, John Hancock faxed Mr. Varma a letter in which they declined to offer the Policy on a preferred rate, as Dr. Roy had initially applied for, but rather offered to issue it on a standard basis.  (Id. ¶ 65.)  Mr. Varma was under the impression that John Hancock declined to issue the Policy at the standard rate because they knew Dr. Roy had Hepatitis B. (Trust SOF ¶ 36.)  John Hancock also sent Dr. Roy a letter on February 24, 2004 advising him

3

that his blood tests were abnormal and advising him to consult a physician. (Id. ¶ 47.) The February 24, 2004 letter to Dr. Roy did not inform him that consultation with a doctor would violate the condition precedent in his insurance application nor that he would have to report back to John Hancock after seeing a doctor. (Id. ¶ 53.)

On March 3, 2004, Dr. Roy requested an increase in insurance from $1 million to $2 million in coverage. (JHLIC SOF ¶ 66.) John Hancock agreed to the coverage increase on March 17, 2004. (Id.) However, on March 15, 2004, prior to John Hancock's agreement to increase coverage, Mr. Roy requested that coverage be reduced back to $1 million, ostensibly in an effort to save money in premium payments. (Id. ¶ 67.) On March 23, 2004, Dr. Roy signed an Application Amendment reflecting coverage for $1 million for a fifteen-year term with an issue date of April 1, 2004. (Id. ¶ 68.) John Hancock ultimately issued the Policy on April 1, 2004; it was delivered to Dr. Roy on March 31, 2004. (Id. ¶¶ 69-70.)

On January 31, 2006, Dr. Roy passed away. (Id. ¶ 71.) Pryia Roy, trustee of the Policy's beneficiary, the Trust, submitted a claim form for the Policy on February 21, 2006. (Id. ¶ 71.) Upon receiving the claim for payment, John Hancock conducted an investigation into Dr. Roy's death because he had died within the Policy's two-year contestability period. (Id. ¶ 72.) After conclusion of the investigation, John Hancock issued a letter on September 14, 2006 to Pryia Roy advising him that because Dr. Roy had consulted with physicians after the Policy's application but before its issuance, the insurance contract never took effect. (Id. ¶ 79.) Thus, John Hancock found that Dr. Roy had violated a condition precedent to the Policy.

On June 28, 2007, the Trust filed suit against John Hancock seeking a declaratory judgment that John Hancock must "fulfill the terms of the Policy and payment of the Claim

submitted" (Compl. ¶ 39) and alleging causes of actions against John Hancock for "breach of contract" and "bad faith claims handling." (Compl. ¶¶ 41-46.) Following conclusion of the discovery period, John Hancock filed the present motion for summary judgment on December 5, 2008. (Docket Entry # 19.) John Hancock asks this Court to find that the Policy in question never took effect because of Dr. Roy's failure to satisfy a necessary condition precedent. In the alternative, John Hancock asks to rescind the policy under the doctrine of equitable fraud. Finally, John Hancock moves to dismiss both the claim for "bad faith claims handling" and its accompanying requests for compensatory and punitive damages.

**II.     Standard of Review**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v.

N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**III.     Analysis**

Under New Jersey law, an insurance policy containing conditions precedent does not take effect until those conditions precedent are satisfied. Levandoski v. Equitable Life Ins. Soc'y, 103 N.J.L. 643, 644 (E. & A. 1927); Daly v. Paul Revere Variable Annuity Ins. Co., 199 N.J. Super. 301, 310 (App. Div. 1976). Here, it is undisputed that the Policy contained a condition precedent allowing it to issue only if the "person proposed for insurance . . . has not consulted or been examined or treated by a physician or practitioner since the latest Part B pertaining to such person was completed." (JHLIC SOF ¶ 5.) It is likewise undisputed that Dr. Roy underwent several treatments, examinations, and consultations with various doctors between December 18, 2003, the date he applied for the Policy, and March 31, 2004, the date of the Policy's delivery. Dr. Roy never advised John Hancock of his repeated medical visits. He never informed them that he had been diagnosed with cancer. In fact, he never took any affirmative steps to comply with the condition precedent set forth in the Policy's application. The law in New Jersey is clear – the failure to abide by a condition precedent means that this insurance contract never took effect. The Trust Parties' arguments to the contrary are unavailing.

First, the Trust Parties argue that neither John Hancock nor Dr. Varma (John Hancock's sales representative) ever noted or pointed out to Dr. Roy the relevant condition precedent. As John Hancock notes, however, the law in New Jersey does not excuse the failure to satisfy a condition precedent upon the mere allegation that the insurance purchaser may not have known

6

about it. "[A]n insured is chargeable with knowledge of the contents of an insurance policy in the absence of fraud or inequitable conduct on the part of the carrier." Edwards v. Prudential Property and Cas. Co., 357 N.J. Super 196, 204 (App. Div. 2003). "Normally, insurance purchasers are expected to read their policies and the law may fairly impose upon them such restrictions, conditions and limitations as the average insured would ascertain from such reading." Id. (quotations omitted.) Here, the Trust Parties supply no evidence that Dr. Varma actively misled Dr. Roy with respect to the condition precedent at issue. They do not allege or offer evidence that he told Dr. Roy not to worry about it or that he somehow waived the terms of the provision on behalf of his employer. In the absence of evidence of fraud, this Court must uphold the terms of the contract as written – in this case, those terms included a clear condition precedent.

      Finally, the fact that John Hancock sent a February 24, 2004 letter to Dr. Roy advising him to see a doctor based upon his substandard blood tests does not change the outcome. The Trust Parties assert that John Hancock told Dr. Roy to see a doctor but did not advise him that seeing a doctor would be a violation of the condition precedent. The fact of the matter, however, is that even if this argument retained merit as a general matter, John Hancock did not send its letter until February 24, 2004. By that point, Dr. Roy had already engaged in numerous doctors' visits, consultations, and examinations, and had already been diagnosed with cancer and undergone a "right trisegmentectomy" of the liver. Thus, the fact that John Hancock sent him a letter advising him to see a doctor two months after he had *already* seen several doctors does not change, alter, or nullify the terms of the condition precedent.

      Having evaluated the facts before it, this Court concludes that the Policy in question

contained a clear condition precedent and that Dr. Roy failed to satisfy it. The Court, therefore, must grant John Hancock's motion for summary judgment and find that the Policy never took legal effect. See, e.g., John Hancock Variable Life Ins. Co. v. Estate of Fong, 124 Fed. Appx. 523 (9th Cir. 2005) (affirming district court's grant of summary judgment where insurance purchaser failed to adhere to a clear condition precedent because she consulted with a doctor, underwent a mammogram, and failed to so advise insurance company). Having found merit in John Hancock's primary argument – that the Policy in question never took legal effect because of Dr. Roy's failure to satisfy a condition precedent – the Court deems as moot the argument for rescission on grounds of equitable fraud and also dismisses the claim for "bad faith claims handling."

### IV.   Conclusion

Thus, for good cause shown,

**IT IS** on this 30th day of June, 2009,

**ORDERED** that John Hancock's motion for summary judgment (Docket Entry # 19) is **GRANTED**; and it is further

**ORDERED** that John Hancock shall return to the Trust Parties all premiums paid with respect to the Policy at issue in this litigation; and it is further

**ORDERED** that the Clerk of the Court shall close the file in this matter.

**SO ORDERED.**

/s/ Jose L. Linares  
United States District Judge